RICHARD MOORE *v.* PHILIP GAMBLE and LUCRETIA, his wife.

1. There can be no doubt as to the power of the court to grant relief against a judgment which is against conscience, which was obtained by fraud, or in any other way, by which injustice has been done; and where the injured party has had no opportunity of defence, or could not make it through any defect of the law, and where adequate relief cannot be afforded by the court where such judgment was obtained, and timely application for relief is made to this court. *Authorities collected,* 3 *Green's Ch.* 466.

2. Where the pretended consideration of a judgment in attachment was for the board of the complainant's wife, and it appears that shortly after he married he left for New Orleans, and that during his absence she lived with defendant; that by the will of complainant's wife's father, the executrix was required to educate and support the complainant's wife during her minority, and that, in consideration thereof, defendants (the executrix and her husband) agreed not to charge complainant anything for his wife's board; that at the time the attachment was taken out, the defendants had in hand funds to an amount more than large enough to pay the claim they made, which belonged to complainant in right of his wife; in such a case, the complainant would be entitled to be relieved against the judgment.

3. In such a case of gross wrong and fraud, this court would not stop to inquire whether or not the injured party might possibly get relief upon an application to open the judgment. Independent of the fact of the alleged agreement, if at the time the board was furnished the defendants had in their hands funds which belonged to the wife, and which, from their nature, there would be a propriety in appropriating in liquidation of the debt contracted for board, this court would interfere and compel such appropriation in satisfaction of the judgment.

4. The bill should state whether the attachment was taken out against the defendant as an absconding or an absent debtor. If the defendant was an absconding debtor, the court certainly would not grant him relief as readily as they would if the proceedings had been against him as an absent or non-resident debtor:

5. A clause in a testator's will was in the following words: " Lastly. I nominate and appoint my said wife, Lucretia Scott, executrix of this my last will and testament, and in whose care and protection I leave my said children, and I hereby desire and enjoin upon her to educate and support them during their minorities, respectively, in a decent and suitable manner, for which purpose it is my intention to provide her the means, as well as for the support of herself."

6. *Held,* that there was no doubt that while the executrix enjoyed the property she was bound to maintain the children, during their minority, to the extent of the means thus placed in her hands. But the obligation existed only while the children remained subject to her authority and under her control, as their mother. That a daughter, by marrying, with-

drew herself voluntarily from her mother's family, and accepted the protection and support of her husband, in preference to that offered by the will of the testator. It was an abandonment of the support she might otherwise have claimed.

Bill filed August 1st, 1849. The cause was heard May Term, 1852, upon bill, answer, replication and proofs. The material facts disclosed by the pleadings and evidence are contained in the Chancellor's opinion

*Mr. W. Halsted,* for complainant.

*Messrs. Beasley* and *Vroom,* for defendants.

THE CHANCELLOR. I have hesitated whether I ought to decide this case upon the pleadings and proofs before me. Important questions of law and equity were argued by counsel or both sides, upon assumed facts, not warranted by the pleadings or proofs. There are blanks in the bill—not of immaterial matters—but necessary to be supplied by facts, upon which most important questions hinge. There are dates as to deaths of individuals, either erroneous, or else inconsistent with other matters of the bill. Neither the answer or the proofs supply these deficiencies; and yet the rights of these parties are submitted for decision, as though it were of no consequence whether or not any certain issue is made, but the court could go to other sources for information, other than the pleadings and evidence.

I mention these matters in justice to myself. I am greatly embarrassed, from the circumstances mentioned, in deciding the case; and if injustice is done, it is not through defect of the law, or the powers of this court, nor altogether, I trust, my own want of apprehension of the principles of equity which ought to govern the case.

The embarrassments occasioned by the defects referred to, will appear in the course of my opinion.

As to the power of the court to grant relief to the complainant against the judgment in attachment, if a proper case is made, there can be no doubt. The court will grant relief against a judgment which is against conscience, which was

obtained by fraud, or in any other way by which injustice has been done, and where the injured party has had no opportunity of defence, or could not make it through any defect of the law, and where adequate relief cannot be afforded by the court where such judgment is obtained, and timely application for relief is made to this court. The authorities are abundant, and will be found collected by counsel in the case of *Executors of Powers* v. *Administrators of Butler*, 3 *Green's Ch.* 466.

The counsel for the complainant insisted that the pretended consideration of this judgment was for the board of the complainant's wife—that shortly after he married, which was in the year 1838, he left for New Orleans, and that during his absence, and up to the time of his wife's death, in the year 1840, she lived with the defendants—that by the will of the testator, the executrix was required to educate and support the complainant's wife during her minority, and in consideration thereof, the defendants agreed not to charge the complainant anything for his wife's board—that at the time the attachment was taken out, the defendants had in hand funds to an amount more than large enough to pay the claim they now make, which belonged to the complainant in right of his wife.

Such a case would entitle the complainant to be relieved against the judgment. For the defendants, under such circumstances, to have taken advantage of the complainant's absence, when he had no opportunity of being heard, or setting up the legal and equitable defence he had against the defendants' demands, would have been a gross wrong and fraud. In a case so gross, this court would not stop to inquire whether or not the injured party might possibly get relief upon an application to open the judgment. The propriety of affording relief in such a case would be so manifest, and could be afforded with so much facility by this court, there could be no hesitation in granting it. And independent of the fact of the alleged agreement, if at the time the board was furnished, the defendants had in their hands funds which belonged to the wife, and which, from

their nature, there would be a propriety in appropriating in liquidation of the debt contracted for the board, this court would interfere and compel such appropriation in satisfaction of the judgment. The court would do this from the consideration that the defendant had no opportunity of making his set-off in the manner prescribed by the statute, and had lost the opportunity in consequence of no laches of his own, and because a court of equity is an appropriate tribunal to settle accounts of such a nature as the complainant alleges exist between the defendant and himself.

But let us see whether the complainant, by his bill or proofs, makes out such a case, or any case which entitles him to relief.

In the first place, I remark, the bill does not state, and it does not anywhere appear in the case, whether this attachment was taken out against the defendant as an absconding or an absent debtor. This is a matter of some importance. If the defendant was an absconding debtor, the court certainly would not grant him relief as readily as they would if the proceedings had been against him as an absent or non-resident debtor.

The only charge of fraud, as to the attachment, is the following : "And the said Philip Gamble and Lucretia, his wife, with the view and intention, as he verily believes, of defrauding him out of his property, sued out a writ of attachment out of the Circuit Court of the county of Mercer, returnable to the term of March, 1848, for the sum of $504.57, upon an account against your orator, which is wholly fraudulent and unjust, and when, at the same time, the said Philip Gamble and Lucretia Gamble were, as your orator believes, justly and equitably indebted to your orator in a large sum of money."

I suppose it is an error as to the attachment having been taken out by Philip Gamble and wife. I infer so from the argument, and from the fact that no allusion whatever is made to any debt upon which Gamble and wife jointly could have obtained a judgment against the complainant. If the allegation is true, it makes the case too intricate for me to

unravel ; and yet the answer admits, in almost the very words of the bill, that Gamble and wife did sue out the attachment. The proceedings in attachment are not proved, and I have no means of ascertaining how the fact really is.

But what was the consideration of this judgment ? To the suggestion made by the opposite counsel upon the argument, that by the bill the consideration of the judgment was not impeached, it was answered that the complainant did not know what the consideration was. If the complainant did not really know what the alleged consideration was, he should have so stated in the bill if he intended to impeach the consideration, and to have charged that the judgment was without consideration. All the complainant had to do was to apply to the record of the court out of which the attachment issued, and examine the accounts on file, or if the accounts were not there, to have made application to the auditors.

Not in connection with the statement in reference to the attachment, but in a prior part of the bill, it is alleged that the wife of the complainant boarded with Lucretia, one of the defendants, from shortly after her marriage until her death. As this is the only fact in the bill from which any indebtedness could possibly arise from the complainant to the defendants, and as it has no connection with any other matter in the bill, by a violent inference, in connection with some admissions made in the answer, we may conclude that the consideration of the judgment was, in part at least, for the board furnished the wife.

The answer, responsive to this part of the bill, is as follows : " But these defendants altogether deny that the account for which said attachment was issued was fraudulent or unjust, or that the said defendants were at that time indebted to the said Richard Moore, the said complainant, in a large sum of money, or in any sum of money whatever ; but, on the contrary thereof, these defendants expressly say that the said attachment was issued by them in order to secure the sum for which, as is stated in the said bill, they obtained judgment, and that a bill of said charges was presented by said Philip Gamble to the complainant, two or three months before the issuing the said attachment, and that the said

complainant did not then pretend, (as is now alleged in the said bill of complaint,) that the said Lucretia had agreed to maintain his said wife, free of expense to him, but on the contrary, the complainant promised the said Philip Gamble to write to him in relation to said bill, but the said complainant having failed so to do, and having neglected to pay the amount of said bill, the said defendants, in order to secure and recover the amount thereof, caused the said writ of attachment," &c.

This is all the answer contains as to the consideration of the judgment.

Assuming, then, that such was the consideration of the judgment, what are the merits of the complainant's case in this particular?

The bill alleges that by the will of Leonard Scott, Lucretia, the executrix, was bound to educate and support the complainant's wife during her minority, and that in consideration thereof, she agreed not to charge anything for the board. If such agreement had been made between the complainant and Lucretia Gamble, I cannot see how it could bind Philip Gamble. The fact of her being the executrix of the will of Leonard Scott, did not make her competent, after her marriage with Philip Gamble, to make any agreement without his consent, which could be enforced, at law or in equity, against either herself or her husband. The agreement is denied by the answer, and no proof of it is made or attempted to be made.

Were the defendants bound to support the wife of the complainant during her minority, under the will of Leonard Scott?

By the will there are several devises and bequests of real and personal property to the defendant Lucretia, some to her absolutely, and others of property to be enjoyed by her during the minority of her children. The clause of the will upon which the question arises, is the following:

" Lastly, I nominate and appoint my said wife, Lucretia Scott, executrix of this my last will and testament, and in

Moore v. Gamble and wife.

whose care and protection I leave my said children, and I hereby desire and enjoin upon her to educate and support them during their minorities respectively, in a decent and suitable manner, for which purpose it is my intention to provide her the means, as well as for the support of herself."

There is no doubt that while the executrix enjoyed this property, she was bound to maintain their children, during their minority, to the extent of the means thus placed in her hands. But this obligation existed only while the children remained subject to her authority, and under her control, as their mother. Henrietta, by marrying the complainant, assumed legal duties and responsibilities inconsistent with such control and authority. Her mother could no longer command her services, which were essential to the support of her household. She gave up the protection to which she was entitled under her mother's roof. She withdrew herself voluntarily from her mother's family, and accepted the protection and support of the complainant, in preference to that which was offered by the will of the testator. The fund provided might be ample for the purpose for which it was appropriated, while the mother and children remained together with those mutual relations subsisting between them. A severance of these relationships, and a voluntary withdrawal by the complainant's wife from the mother's guardianship, was an abandonment of the support which she might otherwise have claimed.

The complainant himself has produced proof that his wife did not remain with the defendants under an agreement, express or implied, that she was to have her board free of charge. A letter addressed by the defendant Lucretia to the complainant, is exhibited on behalf of the complainant. In that letter an agreement is referred to as having been made between the parties, by which the complainant agreed to pay two dollars a week for his wife's board, and a suggestion is made that the amount is too small and that fifty cents a week more should be added. There is an acknowledgment also in the letter of a receipt of fifteen dollars from the complainant. This letter certainly refutes the allegation

in the bill, that the defendant Lucretia had agreed with the complainant to board his wife without charge, in consideration of the duties imposed upon her by the will.   It is evidence produced by the complainant, and is made admissible by being offered by him.

The only ground of complaint that I can see, in reference to the charge for board, is the amount.   The judgment is for five hundred and four dollars and fifty-seven cents.   If the complainant's wife boarded with the defendants from her marriage to the period of her death, at two dollars and fifty cents a week, which is the highest price named in the letter alluded to, the amount, with interest, at the time judgment was rendered, would not amount to three hundred and fifty dollars.

But relief is not sought for on this ground, and there is no allegation of any advantage having been taken in this respect.   Besides, I may be mistaken as to the time of the death of the complainant's wife.   There is a blank in the bill as to the time of her death, and it is not supplied by the evidence.

The only remaining equity set up by the bill is that, at the time the attachment was issued, the defendants had funds in their hands belonging to the complainant, in right of his wife, which ought to have been appropriated in liquidation of the claim made for the board.

And, first, the bill insists that the complainant is *tenant by the curtesy* of lot No. 1, mentioned in the will, and that the defendants should account for the rents and profits since the death of Leonard Scott.

If it were necessary for me to decide the question of the complainant's right as tenant by the curtesy, it would be impossible for me to do so upon the facts as stated in the bill.   It could not be properly decided without ascertaining the fact whether Leonard died before or after his sister Henrietta.   The bill states that Leonard died in 1842, and that Henrietta died in 1840.   And yet the bill alleges that Leonard died, leaving Henrietta him surviving.   The answer treats all these matters as of very little importance, and admits

them, as stated in the bill, to be correct. If the dates in the bill are correct, the question cannot possibly arise.

1. But admitting the complainant to be *tenant by the curtesy* of lot No. 1, it is a question in which the defendants have no interest, and the complainant can enforce no rights of his, arising from such title, against these defendants, unless he can show that they have been in receipt of the rents and profits. There is no charge to that effect in the bill, and it is not shown otherwise how this is a material question in the cause.

2. As to lot No. 2, which was devised to Henrietta, the complainant's wife, the same remarks are applicable to that lot as to lot No. 1. There are no rights which the complainant can enforce against these defendants, unless they have been in receipt of the rents and profits. This they deny, and, in fact, no charge of the kind is made in the bill, nor is there any proof of their receiving any rents or profits from this lot.

3. As to lot No. 5. The complainant alleges the sale was void. Admitting it to be void, the complainant does not show how he is interested in that question, or in what manner he can derive any benefit from setting the sale aside. But I have decided as to the validity of this sale in the case of Scott *v.* Gamble and wife, decided at this term. The same evidence as to this sale was, by consent of counsel, used in both cases.

4. As to the two hundred dollars which the bill alleges the wife of the complainant, before her marriage with him, deposited in the Savings Bank of Philadelphia, and which, since her death, Lucretia, one of the defendants, drew out of the bank ; if the allegations in reference to this transaction were all true, the complainant can claim the money only as administrator of his wife, and the defendants are not bound in this suit to account to him for it.

5. In reference to the other matters in the bill, the wearing apparel, watch and other articles, and also the payment of twenty-five dollars, if they were proved, I have no means of judging whether any credit has been given for

them by the defendants.    In all, they amount but to a small sum, and I do not think the proof in regard to them of such a nature as to justify my interference with this judgment.

This bill must be dismissed, with costs.    I desire that the conclusion I have reached in this case, as well as that in the case of Scott *v.* Gamble and wife, may not be construed into an approval of the manner in which these defendants have managed the trust committed to their hands.    There are strong reasons for supposing, from the developments that have been made, that the rights of his children, which the testator with so much confidence committed to the mother, have not been promoted by her marriage with Philip Gamble.    And I feel it my duty further to remark that I do not desire anything I may have said to prejudice the complainant in any application he may make for relief to the court in which the judgment in question was obtained.

The decree of this court does not affirm the correctness of that judgment, but only that relief cannot be had against it in this court upon the case made by the bill.

CITED *in Davis* v. *Headley,* 7 *C. E. Gr.* 123; *Doughty* v. *Doughty,* 12 *C. E. Gr.* 319; *Holmes* v. *Steele,* 1 *Stew.* 176; *Bellows* v. *Wilson,* 2 *Stew.* 127.